NEW ORLEANS PUBLIC SERVICE, INC., Plaintiff-Appellant,

v.

The CITY OF NEW ORLEANS, the Council for the City of New Orleans, Sidney J. Barthelemy, et al., Defendants-Appellees.

No. 85–3654.

United States Court of Appeals, Fifth Circuit.

Feb. 14, 1986.

Andrew P. Carter, J. Wayne Anderson, W. Glenn Burns, New Orleans, La., for plaintiff-appellant.

A. Karen Hill, F.E.R.C., Jerome M. Feit, Washington, D.C., for amicus-F.E.R.C.

Herschel L. Abbott, Jr., David G. Radlauer, Edward H. Bergin, R. Lewis McHenry, H. Mark Adams, Eric J. Mayer, W.D. Meriwether, Jr., Vice President & Gen. Counsel, Middle South, New Orleans, La., Louis H. Willenken, Reid & Priest, New York City, for amicus-Middle South.

Thomas Milliner, Bruce Naccari, Beverly Zervigon, Okla Jones, II, Salvador Anzelme, City Atty., New Orleans, La., Bernhardt K. Wruble, Clinton A. Vince, Glen L. Ortman, Paul E. Nordstrom, Washington, D.C., for City of New Orleans.

Hiram C. Eastland, Jr., Robert H. Harper, Jackson, Miss., for amicus-Miss. Public Service Com'n.

Richard M. Troy, Asst. Atty. Gen., La. Dept. of Justice, New Orleans, La., for amicus-State of la.

Frank Spencor, Jackson, Miss., Felshaw King, President, Nat. Ass'n of State Utili-

ty, Consumer Advocates, Clearfield, Utah, for amicus-Nat. Ass'n of State Utility.

Before RANDALL and WILLIAMS, Circuit Judges, and HINOJOSA,* District Judge.

RANDALL, Circuit Judge:

Appellant New Orleans. Public Service, Inc. appeals the district court's dismissal of this cause of action for lack of subject matter jurisdiction and the district court's decision to abstain. We reverse and remand.

## I.

Appellant New Orleans Public Service, Inc. ("NOPSI"), a subsidiary of Middle South Utilities Inc. ("MSU"), provides electric services to most of the City of New Orleans. NOPSI also engages in the production, wholesale interstate purchase, wholesale interstate sale and retail sale of electric power. The genesis of this case is an "Opinion and Order Setting Just Reasonable and Non-Discriminatory Rates," 31 F.E.R.C. (CCH) ¶ 61,305 (June 13, 1985) ("Opinion No. 234"), issued by the Federal Energy Regulatory Commission ("FERC"), allocating the cost of Grand Gulf Unit One, a 1250 megawatt nuclear power plant located in Port Gibson, Mississippi, among four MSU subsidiaries: Arkansas Power & Light Co.; Louisiana Power & Light Co.; Mississippi Power & Light Co.; and NOPSI.[1] NOPSI's share of the costs was 17%. In July 1985, NOPSI accordingly began paying its 17% of the costs, 15.5 million dollars a month.

On May 17, 1985, NOPSI filed an application for a permanent rate increase with Appellee Council for the City of New Orleans ("the Council"). On July 25, 1985, the Council entered a resolution requiring NOPSI to refile its application and directing NOPSI to file a request for interim rate

relief. Emergency interim relief was granted by the Council on September 5, 1985. In its interim relief order, the Council directed NOPSI to freeze electric rates until further regulatory action. The Council noted that NOPSI's immediate cash flow problems could be alleviated by NOPSI's issuance of 35 million dollars in securities pending the approval of the Securities and Exchange Commission; the repayment of 32 million dollars in cash advances made by NOPSI to an MSU subsidiary; and the continued omission of NOPSI's dividend payments on common stock to MSU.

NOPSI sought injunctive relief from the Council's order in the district court. NOPSI first raised a statutorily-based preemption claim. NOPSI alleged that the Council, in setting NOPSI's retail rates, had refused to recognize the expenses NOPSI was required to pay by FERC order: the Council's rate freeze assumed in essence that the FERC opinion had never been issued, and that NOPSI was obtaining no Grand Gulf Unit I power. The refusal to recognize FERC-determined wholesale costs for retail rate-making purposes frustrated the FERC order allocating costs, thereby violating FERC's exclusive authority to regulate wholesale energy under the Federal Power Act, 16 U.S.C. §§ 824–824k. NOPSI also claimed that the Council's refusal to honor the FERC order constituted an impermissible burden on interstate commerce, as NOPSI would be rendered insolvent; the FERC order allocating costs among companies in several states would be frustrated; financial agreements among the MSU companies would be harmed; the operation of Grand Gulf Unit One would be threatened; and the viability of the interstate integrated electric system would be seriously undermined.

The district court dismissed NOPSI's claims for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), because of the Johnson Act, 28 U.S.C. § 1342. The Johnson Act places statutory limitations on

---

* District Judge of the Southern District of Texas, sitting by designation.

1. Opinion No. 234 is presently the subject of a direct appeal in the D.C. Circuit.

the circumstances in which a federal court can issue injunctions against state orders affecting rates of public utilities. The Johnson Act provides:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:
>
>> (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
>>
>> (2) The order does not interfere with interstate commerce; and,
>>
>> (3) The order has been made after reasonable notice and hearings; and,
>>
>> (4) A plain, speedy and efficient remedy may be had in the courts of such State.

If all four criteria of the Johnson Act are met, the Act will bar federal jurisdiction. *South Central Bell Telephone Co. v. Louisiana Public Service Commission,* 744 F.2d 1107, 1123 n. 28 (5th Cir.1984), *petition for cert. filed,* —— U.S. ——, —— S.Ct. ——, —— L.Ed.2d ——, 53 U.S.L.W. 3449 (Nov. 30, 1984) (84–870). NOPSI contended that the first two criteria of the Johnson Act—that jurisdiction be based solely on diversity of citizenship or repugnance of the order to the Federal Constitution, and that the order not interfere with interstate commerce—had not here been met, and that the district court thus had jurisdiction over the case.[2]

The district court found otherwise. Although NOPSI's complaint had claimed federal question jurisdiction under 28 U.S.C. § 1331, the district court did not address whether NOPSI had presented a federal question arising under a federal law, but instead discussed the applicability of a particular jurisdictional provision of the Federal Power Act, § 825p, a provision which serves to reinforce the general jurisdictional provisions governing the federal district courts. *See Montana-Dakota Utilities Co. v. Northwestern Public Service Co.,* 341 U.S. 246, 257, 71 S.Ct. 692, 698, 95 L.Ed. 912 (1951) (Frankfurter, J., dissenting). Under § 825p of the Federal Power Act, federal district courts have exclusive jurisdiction over actions "brought to enforce any liability or duty created by or to enjoin any violation" of a FERC opinion or order.[3] Although NOPSI asserted that the FERC opinion created a "duty" on the part of the Council to pass through to its retail rate payers the costs incurred by NOPSI as a result of its 17% FERC cost allocation, the district court's own review of the FERC opinion convinced the court that no "duty" had been created therein. There was no mandate to pass through the expenses allocated by FERC; indeed, "such a provision [was] conspicuous by its absence." Record Vol. 2 at 330. The FERC opinion merely prescribed the interstate wholesale rates that NOPSI would have to pay for its share of Grand Gulf Unit I energy. Given its interpretation of the FERC opinion, the district court found that jurisdiction under § 825p of the Federal Power Act was lacking, and apparently also reasoned that NOPSI could not sustain its statutorily-based claim of federal preemption. Without this statutorily-based claim, jurisdiction rested "solely" on "repugnance of the order to the Federal Constitution," satisfying the first criterion of the Johnson Act. The district court also found that the Council's order did not interfere with interstate commerce, satisfying the second criterion of

---

**2.** NOPSI does not on appeal address the applicability of the third and fourth criteria of the Johnson Act, but confines itself to disputing the applicability of the first and second criteria. Appellant's Brief at 40. Thus, we will not consider whether the third and fourth criteria of the Johnson Act here apply.

**3.** Section 825p provides in relevant part:

> The District Courts of the United States, and the United States Courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder.

the Johnson Act. Because the district court concluded that the two Johnson Act criteria challenged by NOPSI had been met, federal jurisdiction was precluded.

Finally, the district court observed that even if it were to find that the Johnson Act did not bar adjudication of NOPSI's request for relief from the Council's regulatory authority, the jurisprudential doctrine of abstention would dictate a similar result. Citing *Burford v. Sun Oil,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the district court concluded that it should exercise a "hands-off policy" in reference to the Council's local rate-making.

## II.

NOPSI on appeal contends that the district court erred in dismissing this case for lack of subject matter jurisdiction. We agree. In dismissing this case, the district court first considered NOPSI's claims within the jurisdictional grant of 16 U.S.C. § 825p. As discussed above, the district court found from its own review of the FERC opinion that a pass through of NOPSI's costs was not explicitly mandated therein, and was in fact "conspicuous by its absence," thereby precluding jurisdiction under § 825p.[4] We need not and do not decide, however, whether the federal court had jurisdiction of this matter under § 825p, for federal jurisdiction over NOPSI's statutorily-based preemption claim can be sustained under a different jurisdictional grant: 28 U.S.C. § 1331. Section 1331 provides for federal jurisdiction over questions "arising under" a federal law.[5] As noted by the Supreme Court, "the phrase 'arising under' masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." *Franchise Tax Board v. Construction Laborers Trust,* 463 U.S. 1, 8, 103 S.Ct. 2841, 2845–46, 77 L.Ed.2d 420 (1983). However, an action may "arise under" federal law when "in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law." *Id.* at 9, 103 S.Ct. at 2847 (quoting P. Bator, P. Mishken, D. Shapiro & H. Wechsler, *Hart & Welchsler's The Federal Court's and the Federal System* 889 (2d ed. 1973)). Indeed, the Supreme Court has

---

4. We need not decide whether the FERC opinion contemplates a pass through of costs to retail rate payers. We note that FERC adopted the cost allocation recommended by the administrative law judge below, and in so doing commented approvingly that the judge had "concluded that the costs of Grand Gulf capacity and energy should be shared equitably by all four operating companies *and their customers."* Record Vol. 1 at 35 (emphasis added). Both NOPSI and FERC, writing here as amicus curiae, contend that the FERC opinion thus allocated the Grand Gulf Unit One costs to NOPSI *and its customers,* thereby preempting contrary local action and mandating Council recognition and pass through of the costs. Certainly the above quoted language would call into question the district court's conclusion that a pass through provision is "conspicuous by its absence." Moreover, a recent D.C. Circuit opinion, while addressing an issue different from that raised by NOPSI here, encountered no difficulty in construing the same FERC opinion before us today, Opinion No. 234, to "impose[ ] upon [Arkansas Power & Light Company] *(and hence upon its rate payers)* a thirty-six percent share of the cost of the Grand Gulf Nuclear Plant." *Reynolds Metals Company v. FERC,* 777 F.2d 760 (D.C.Cir.1985) (emphasis added) (dismissing as premature an emergency petition and motion for stay seeking relief from FERC refusal to include refund obligation in order and denying injunction sought by major customer of electric utility as FERC retained authority to order refunds). Finally, at least one Circuit has held that § 825p does not require an undisputed violation of a clear FERC opinion before jurisdiction may be assumed by the district court. Rather, parties may heatedly dispute the effect and interpretation to be given a FERC opinion and still obtain federal jurisdiction under § 825p. *State of California v. Oroville-Wyandotte Irrigation District,* 411 F.Supp. 361 (E.D. Ca.1975), *aff'd,* 536 F.2d 304 (9th Cir.), *cert. denied,* 429 U.S. 922, 97 S.Ct. 320, 50 L.Ed.2d 290 (1976) (finding jurisdiction under 16 U.S.C. § 825p even where there was a conflict in the way different agencies interpreted the effect of decisions by the FPC [precursor to FERC] and the California Public Utilities Commission, and concluding ultimately that the two decisions did not conflict).

5. 28 U.S.C. § 1331 provides:
   The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

recently observed that a "plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983). Of course, to avoid dismissal under Fed.R.Civ.P. 12(b)(1), the question presented must be "substantial." A complaint's allegations are "insubstantial if they are obviously without merit or if prior decisions foreclose controversy on the subject." *In re Carter*, 618 F.2d 1093, 1103 (5th Cir.1980), *cert. denied*, 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981). So rigorous is the test for dismissal under Rule 12(b)(1) that if there is "any foundation of plausibility to the claim, federal jurisdiction exists." *Meason v. Bank of Miami*, 652 F.2d 542, 547 (5th Cir.1981), *cert. denied*, 455 U.S. 939, 102 S.Ct. 1428, 71 L.Ed.2d 649 (1982) (quoting 13 C. Wright & A. Miller, *Federal Practice & Procedure* § 3564 at 428 (1975)). We now turn to consider NOPSI's statutorily-based preemption claim.

NOPSI's preemption claim does not depend, as the district court seemed to think, upon an explicit FERC mandate to pass through costs. Rather, NOPSI contends that the Council's refusal to recognize the FERC-determined wholesale costs intrudes upon and frustrates the FERC determination in violation of Congress' intent that exclusive authority over wholesale rates be vested with FERC under the Federal Power Act. In 1935, with Part II of the Federal Power Act, 16 U.S.C. §§ 824–824k, Congress "delegated to the Federal Power Commission, now the Federal Energy Regulatory Commission [FERC] exclusive authority to regulate the transmission and sale at wholesale of electric energy in interstate commerce, without regard to the source of production." *New England Power Co. v. New Hampshire*, 455 U.S. 331, 340, 102 S.Ct. 1096, 1101, 71 L.Ed.2d 188 (1982). The 1935 enactment was a "direct result" of the Supreme Court's holding in *Public Utilities Commission v. Attleboro Steam & Electric Co.*, 273 U.S. 83, 47 S.Ct. 294, 71 L.Ed. 54 (1927), "that the states lacked power to regulate the rates governing interstate sales of electricity for resale." *New England Power Co.*, 455 U.S. at 340, 102 S.Ct. at 1101. Congress created a "bright line" between federal and state jurisdiction, denying "state power to regulate a sale 'at wholesale to local distributing companies' and allow[ing] state regulation of a sale at 'local retail rates to ultimate consumers.'" *F.P.C. v. Southern California Edison Co.*, 376 U.S. 205, 214, 84 S.Ct. 644, 650, 11 L.Ed.2d 638 (1964) (quoting *Illinois National Gas Co. v. Central Illinois Public Service Co.*, 314 U.S. 498, 504, 62 S.Ct. 384, 386, 86 L.Ed. 371 (1942)). The exclusive authority granted FERC over wholesale rates led the Supreme Court in *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 251–52, 71 S.Ct. 692, 695–96, 95 L.Ed. 912 (1951), a case which itself invoked the federal question jurisdiction of 28 U.S.C. § 1331, to rule that "the right to a reasonable rate is the right to the rate which [FERC] files or fixes, and ... the courts can assume no right to a different one." Invoking the reasoning of *Montana-Dakota*, NOPSI argues that the states, like the courts, must recognize FERC-determined wholesale rates. In sum, NOPSI contends that the preemptive effect of the Federal Power Act and the *Montana-Dakota* holding forbid the states from intruding upon an area determined by Congress to be within the exclusive jurisdiction of FERC: the setting of wholesale costs.

NOPSI cites several state supreme court cases to support its preemption argument. *See Narragansett Electric Co. v. Burke*, 119 R.I. 559, 381 A.2d 1358 (R.I.1977), *cert. denied*, 435 U.S. 972, 98 S.Ct. 1614, 56 L.Ed.2d 63 (1978) (finding that the rate increase in the cost of electricity to Narragansett constituted a reasonable operating expense and should be so viewed by the local rate-making authority); *Northern States Power Co. v. Hagen*, 314 N.W.2d 32

(N.D.1981) (holding that for purposes of fixing intrastate rates, the doctrine of federal preemption required the local Public Service Commission to treat the interstate wholesale rate filed with FERC as a reasonable operating expense); *Northern States Power Co. v. Minnesota Public Utilities Commission,* 344 N.W.2d 374 (Minn.), *cert. denied,* —— U.S. ——, 104 S.Ct. 3546, 82 L.Ed.2d 850 (1984) (holding that the Minnesota Public Utilities Commission was required to recognize the losses under a FERC-determined wholesale rate as expenses for power purchased in determining retail rates to be charged to Minnesota rate payers and noting that in general regulators have allowed recovery of such costs through retail rates). In addition, in *Appalachian Power Co. v. Public Service Commission of West Virginia,* 614 F.Supp. 64 (S.D.W.Va.1985), the plaintiff power company, like NOPSI here, sought injunctive relief to enjoin the local regulatory commission from denying the company recovery of costs to be incurred under a FERC order. The plaintiff claimed that the FERC order preempted the commission's refusal to pass through the costs. The district court agreed. Basing its subject matter jurisdiction in part upon 28 U.S.C. § 1331, the district court granted the injunctive relief sought, finding that the local commission had infringed upon "the FERC's exclusive authority to regulate the transmission and sale of energy in interstate commerce." *Id.* at 73.

■ Given the above, we find that absent application of the Johnson Act, NOPSI's statutorily-based preemption claim presents a substantial federal question over which the district court has jurisdiction under 28 U.S.C. § 1331. However, we do not decide, as NOPSI contends we must, whether NOPSI will prevail in its preemption claim. Achieving federal jurisdiction does not guarantee success on the merits of a claim. *See Montana-Dakota,* 341 U.S. at 249, 71 S.Ct. at 694. We therefore do not determine whether the Council must immediately pass through NOPSI's costs. Indeed, the *Narragansett* case, on which NOPSI so heavily relies, did not itself require immediate pass through of costs to retail rate payers, but held instead that "we do not order the [local commission] to automatically adjust the retail rates.... [W]e remand the case to the [local commission] with the direction that no matter what method it adopts in considering Narrangansett's proposed rate increase it must treat the FPC filed and bonded purchase price to NEPCO as an actual operating expense." 381 A.2d at 1363.

### III.

■ We now must determine whether the Johnson Act applies to bar federal jurisdiction over NOPSI's claim. We conclude that it does not. The Johnson Act removes federal jurisdiction of claims which rely "solely" on "repugnance of the order to the Federal Constitution." As NOPSI's claim raises a federal question about the preemptory effect of the Federal Power Act, it cannot be seen to rely "solely" on constitutional grounds. A statutorily-based preemption claim will not provide a basis for invoking the Johnson Act to deprive the federal courts of jurisdiction. *See International Brotherhood of Electric Workers v. Public Service Commission of Nevada,* 614 F.2d 206 (9th Cir.1980) (finding that although a challenge to a local rate order based on statutory preemption could be regarded as constitutional for some purposes, it would not be so seen for purposes of the Johnson Act, for jurisdiction was not based solely on repugnance of the order to the Federal Constitution, but rested in part upon proper interpretation of a federal statute and on general federal question jurisdiction); *Aluminum Company of America v. Utilities Commission of North Carolina,* 713 F.2d 1024 (4th Cir.1983), *cert. denied,* 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984) (refusing to apply the Johnson Act as a bar to federal jurisdiction when jurisdiction was based upon federal questions and preemption). As we find that the first criterion of the Johnson Act— that jurisdiction be based solely on repugnance of the order to the Federal Constitu-

tion—has not here been met, we hold that the district court erred in applying the Johnson Act to bar its jurisdiction.[6]

## IV.

█ Finally, we find that this case is not an appropriate one for abstention. The doctrine of abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate controversies properly before it." *County of Allegheny v. Frank Mastruda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–1063, 3 L.Ed.2d 1163 (1959). The *Burford*-type abstention invoked by the district court below is appropriate when a case involves an essentially local issue arising out of a complicated state regulatory scheme. *See International Brotherhood of Electric Workers*, 614 F.2d at 213. When Congress has created a statutory scheme, such as the Federal Power Act, which arguably preempts the local regulation complained of, a fundamental element of *Burford* abstention is thrown into doubt, for we must question whether the case indeed involves an essentially local issue. When the claim presented is predicated upon federal preemption, "it is well established that 'the basic premise of abstention—avoiding needless federal court intervention into important matters within a State's jurisdiction to regulate—obviously is lacking.'" *South Central Bell Telephone*, 744 F.2d at 1123 (quoting *Aluminum Co. of America*, 713 F.2d at 1030). We therefore find that the district court erred in abstaining, and remand this case to the district court for decision on the merits.

For the above reasons the order of the district court dismissing this case for lack of subject matter jurisdiction and on abstention grounds is REVERSED and RE-MANDED for decision on the merits.

---

6. As noted above, for federal jurisdiction to be barred by the application of the Johnson Act, all four criteria of the Act must be met. Because we find that the first criterion has not here been met and conclude therefore that the Johnson Act was wrongly applied to NOPSI's claims, we need not consider whether the second criterion of the Act—that the order not interfere with interstate commerce—has or has not also been met.