STATE OF TEXAS, Plaintiff,

v.

SYNCHRONAL CORPORATION, Synchronal Group, Inc., Omexin Corporation, Smoothline, Inc., Richard Kaylor, Thomas L. Fenton, and Ira Smolev, Defendants.

No. A 90 CA 783.

United States District Court,
W.D. Texas,
Austin Division.

June 9, 1992.

R. Laurence Macon, Akin, Gump, Strauss, et al, David Blair West, Cox & Smith, San Antonio, Tex., Robert E. Reyna, Texas Attorney General's Office, Consumer Protection Div., Dallas, Tex., for plaintiff.

Craig Jordan, Asst. Atty. Gen., No Pro Hac Vice, Consumer Protection Div., Dallas, Tex., Stephen T. Hutcheson, Cox & Smith, Inc., San Antonio, Tex., Stuart L. Friedel, Michael C. Lasky, Davis & Gilbert, New York City, for defendants.

## FIRST AMENDED ORDER

SPARKS, District Judge.

On March 26, 1992, counsel for the parties in the above-styled lawsuit appeared before this Court to argue pending motions. As commonly encountered by the Court, the suit has an interesting and slightly convoluted procedural history that requires a brief explanation.

## PROCEDURAL HISTORY

The parties listed above as Defendants, Synchronal, et al. ("Synchronal"), originally filed a lawsuit, cause number A–90–CA–783, in the United States District Court in Austin, Texas on September 14, 1990. The suit was filed in response to a proposed judgment which the Office of the Attorney General of Texas had presented to Synchronal. Unhappy with the proposed judgment, and in anticipation of litigation with the State of Texas, Synchronal filed suit for declaratory and injunctive relief, asking this Court to declare the State's enforcement of the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA") and the Texas Food, Drug and Cosmetic Act ("FD & C Act") unconstitutional, to enjoin the State from enforcing the DTPA and the FD & C Act against Synchronal, and to declare that Synchronal was not violating the DTPA or FD & C Act.

The State of Texas filed motions to dismiss Synchronal's lawsuit, to grant the State a summary judgment, and to dismiss the lawsuit on the grounds of abstention. None of those motions have been ruled on.

On March 19, 1991, the State of Texas filed its own lawsuit in the 160th Judicial District Court of Dallas County, Texas, seeking to enjoin Synchronal from a variety of activities relating to the "infomercials" it displays on cable television. An "infomercial" is an "informational show", in effect a long commercial. The infomercials in this case promote products and programs allegedly to cure baldness, decrease cellulite, and cure impotence. According to the State, Synchronal's infomercials are false and misleading and some of the products advertised are in violation of federal and state laws regarding new drugs.

Synchronal removed the state case to the Northern District Court the next week, and that court in turn transferred it to Judge Walter Smith in the Western District, who on August 14, 1991, transferred the case to Judge James R. Nowlin in Austin for consolidation with cause number A–90–CA–783. Finally, on January 15, 1992, the consolidated case, including cause numbers A–90–CA–783 and A–91–CA–539, was transferred to this judge.

Before the Court at the time of the hearing were various motions, including the already mentioned motions by the State in Synchronal's suit and a motion by Synchronal to dismiss or stay the State's suit and two motions by the State to remand the case to the Dallas County District Court.

## ANALYSIS

This case belongs in a Texas State Court. The State of Texas has a valid interest in protecting consumers from false or misleading advertising and from potentially dangerous or useless products. *See e.g., Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460, 98 S.Ct. 1912, 1920, 56 L.Ed.2d 444 (1978). Synchronal does not have a valid claim of federal preemption which would preclude abstention or remand, nor will it be harmed by proceeding in state court where it will be fully able to raise its constitutional claims as defenses.

### 1. Federal Preemption

Synchronal contends that abstention is inappropriate because it has raised a preemption claim in its initial lawsuit and as a defense to the State's lawsuit. This Court recognizes that a claim of preemption may foreclose a federal court's decision to abstain. *See New Orleans Pub. Ser. v. City of New Orleans*, 782 F.2d 1236, 1243 (5th Cir.1986). However, abstention is not necessarily prohibited every time preemption is invoked. *Ford Motor Co. v. Ins. Comm'r of Commonwealth of Pa.*, 874 F.2d 926, 934 (3d Cir.1989); *see also Federal Express Corp. v. Tennessee*

*Pub. Serv. Comm'n,* 925 F.2d 962, 968 (6th Cir.1991) (preemption claim does not modify abstention analysis so long as state court has concurrent jurisdiction to decide preemption question); *New Orleans,* 782 F.2d at 1241 (preemption question must be substantial to cause federal court to have jurisdiction and, presumably, to foreclose abstention). In this case, there is no federal preemption and therefore abstention is not precluded.

In its original complaint, Synchronal claims that the State's claims under the Texas DTPA and FD & C Act are preempted by the Federal Communications Commission ("FCC"), the Food & Drug Administration ("FDA"), and the Federal Trade Commission ("FTC"). In their oral arguments before this Court, counsel for both Synchronal and the State focused on FCC preemption. Counsel for Synchronal, in fact, conceded that their FDA and FTC preemption claims were weak and did not argue those claims at all before this Court, although they were, of course, raised in the pleadings. Given the recent case of *Kellogg Co. v. Jim Mattox,* 763 F.Supp 1369 (N.D.Tex.1991) decided on April 3, 1991, by the United District Court in Dallas, Texas [1] and the concession by Synchronal's counsel, this Court finds that neither the FDA or the FTC preempt application of the DTPA or FD & C Act in this case and thus will address FCC preemption only.

Federal law may preempt state regulation in three instances: (1) Congress may explicitly preempt an area of state law; (2) Congress may enact statutes which implicitly preempt state law; and (3) even where not entirely displaced, state law may be preempted if it actually conflicts with federal law, making it impossible to comply with both state and federal law or where the state law obstructs the purposes and objectives of Congress. *Trans World Airlines, Inc. v. Mattox,* 897 F.2d 773, 778–79 (5th Cir.1990) (quoting *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 299–300,

108 S.Ct. 1145, 1150–51, 99 L.Ed.2d 316 (1988)).

In the case of regulation of cable television, Congress narrowed the question of preemption substantially in a section under the subchapter of Title 47, which deals expressly with Cable Communications. Section 552(c) states:

> Nothing in this subchapter shall be construed to prohibit any State or any franchising authority from enacting or enforcing any consumer protection law, to the extent not inconsistent with this subchapter.

47 U.S.C. § 552(c) (1991 Supp.). The only section this Court can find which addresses any of the activities the Attorney General seeks to regulate with regard to Synchronal is section 558. That section states:

> Nothing in this subchapter shall be deemed to affect the criminal or civil liability of cable programmers or cable operators pursuant to the Federal, State, or local law of libel, slander, obscenity, incitement, invasions of privacy, *false or misleading advertising,* or other similar laws....

47 U.S.C. § 558 (1991 Supp.) (emphasis added).

This section probably does not even apply to Synchronal, which is a "television direct response company", or any of the other Defendants, who make the products Synchronal advertises through infomercials, because they do not appear to fall under the definition of cable operators in Section 522. If it did apply to Synchronal or the other Defendants, it clearly does not conflict with Texas State law. *See also Head v. New Mexico Bd. of Examiners in Optometry,* 374 U.S. 424, 432, 83 S.Ct. 1759, 1764, 10 L.Ed.2d 983 (1963) (state regulation of advertising complements, not conflicts with, FCC's regulatory function). Congress' express purpose is to authorize, not preempt, application of state law in the realm of consumer protection in the cable

---

**1.** In *Kellogg,* the Northern District Court, in a very good and thorough opinion, held that the FDA and the FTC did not preempt enforcement procedures by the Attorney General of Texas under the Texas FD & C Act. As in this case, the Attorney General sought to prevent Kellogg from making insupportable claims on its boxes of Heartwise cereal and from including psyllium in the cereal since its use had not been established as safe in foods.

television industry. Synchronal's claims of FCC preemption of state law are without substantial merit.

### 2. Pullman Abstention

■ In *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Supreme Court said "[i]n the absence of any showing that ... obvious methods for securing a definitive ruling in the state courts cannot be pursued with full protection of the constitutional claim, the district court should exercise its wise discretion by staying its hands." *Id.* at 501, 61 S.Ct. at 645. Accordingly, this Court abstains, leaving this case to the able hands of the Texas courts.

■ The general theory of *"Pullman* abstention" is that if a question of state law is unsettled, state courts should decide the issue first to avoid any unnecessary rulings on the constitutionality of a state statute or regulation. *See id.* at 500, 61 S.Ct. at 645; *City of Meridian v. Southern Bell Tel. & Tel. Co.*, 358 U.S. 639, 641, 79 S.Ct. 455, 457, 3 L.Ed.2d 562 (1959). In *Pietzch v. Mattox*, 719 F.2d 129 (5th Cir. 1983), the Fifth Circuit stated that if a federal court is convinced of at least one of three factors, *Pullman* abstention is appropriate. Those three factors are:

1) whether the disposition of a question of state law involved in the case can eliminate or narrow the scope of the federal constitutional issue;

2) whether the state law question presents difficult, obscure or unclear issues of state law; or

3) whether a federal decision could later conflict with subsequent state court resolutions concerning the same regulatory

program or scheme, thus engendering more confusion.

*Id.* at 131.

This Court finds that all three factors, each described by the Fifth Circuit as being sufficient grounds for abstention, are present in this case.

Synchronal appears to be primarily concerned with the State's "threatened enforcement", the agreed judgment which the State proposed to Synchronal before litigation began in an effort to avoid such litigation. Until the issues of Synchronal's alleged violations of the DTPA and FD & C Act are tried in a state court, this Court does not know whether the State's "threatened enforcement", some other scheme of regulation, some combination thereof, or no enforcement will be imposed upon Synchronal and the other Defendants.[2] A state court, not this Court, should make the preliminary determinations concerning the Attorney General of Texas' "interpretation and application of the DTPA and FD & C Act, and his right to interpret and apply these acts through the enforcement process", which Synchronal asks this Court to do. *See Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief,* cause number A–90–CA–783, para. 39. At that point, federal constitutional issues may be eliminated or at least narrowed. Furthermore, a Texas state court is fully qualified and capable of determining the validity of any constitutional defenses Synchronal may raise in the State's suit.

Application of the DTPA and the FD & C Act to Synchronal and the other Defendants in this case raises novel issues of law in Texas. Production and presentation of

---

2. Having disposed of federal preemption, the remaining constitutional claims asserted by Synchronal, except equal protection, concern only the constitutionality of the Attorney General of Texas' "threatened" enforcement.

Synchronal's equal protection claim does not warrant discussion in the text of this opinion. In its complaint, Synchronal did not even make the necessary allegation that the Attorney General's decision to seek enforcement against Synchronal was in bad faith, "i.e., based upon such impermissible considerations as race, religion, or [Synchronal's] exercise of constitutional rights." *Kellogg,* 763 F.Supp. at 1382 (citing

*United States v. Greenwood,* 796 F.2d 49, 52 (4th Cir.1986); *United States v. Murdock,* 548 F.2d 599, 600 (5th Cir.1977)). None of the facts alleged by Synchronal even vaguely suggest an impermissible motive on the part of the Attorney General.

"Infomercials" are a relatively new phenomena. The fact that Synchronal and the other plaintiffs in the federal suit are the first persons making, or otherwise affiliated with, infomercials, whom the Attorney General of Texas has sought enforcement of the DTPA and the FD & C Act against, does not mean they were discriminated against or even specially chosen.

"infomercials" on cable television is a recent phenomenon, which the courts have had little opportunity to deal with yet. This Court could only find one case in the United States which deals with regulation of such advertisements. *See Federal Trade Comm'n v. California Public Research, Inc.*, 2 Trade Cas. (CCH) p. 69,564, 1991 WL 208470 (D.Nev. Aug. 27, 1991). Texas has not only had no opportunity to decide the applicability of the DTPA or FD & C Act to infomercials, but there are no reported cases in Texas discussing those acts applicability to regular television commercials either.

Finally, if this Court retains jurisdiction and decides how the Attorney General ought to interpret and apply the DTPA and FD & C Act with respect to producers of infomercials and persons who advertise their products on infomercials, there is certainly a chance that a later state decision may conflict with that decision.

Texas has a valuable interest in protecting its residents from false advertising and potentially dangerous products. Congress has clearly left much of such regulation to the individual States. Certainly in such a new area of advertising, the Texas courts ought to be the first to interpret existing regulations' applicability to these Defendants and to fashion the relief it deems appropriate. Therefore, this Court dismisses cause number A–90–CA–783 (Synchronal's original federal suit) without prejudice.

### 3. Remand

■ In addition to dismissing cause number A–90–CA–783, this Court also remands cause number A–91–CA–599 to the 160th Judicial District Court of Dallas County, Texas.[3] There is no diversity because the State of Texas is not a citizen for purposes of diversity jurisdiction, and there is no federal preemption to prevent such a remand. *See Moor v. County of Alameda,* 411 U.S. 693, 717, 93 S.Ct. 1785, 1800, 36 L.Ed.2d 596 (1973) (State is not a resident for purposes of diversity jurisdiction); *Bloom v. Barry,* 755 F.2d 356, 358 (3d Cir.1985) (district court which receives case

by way of transfer may remand case back to state court from which it was originally removed).

Synchronal and the other Defendants will not be harmed by this decision. They can raise their constitutional defenses in the state court as easily as in this Court. And, if after a state court decision on the state law questions, Synchronal or any of the other Defendants still believe they have valid constitutional claims, they may then raise them in a federal court. *See Nissan Motor Corp. in U.S.A. v. Harding,* 739 F.2d 1005, 1011 (5th Cir.1984).

### 4. Younger Abstention

■ In the alternative, should *Pullman* abstention be found inappropriate, the Court dismisses cause number A–90–CA–783 on the grounds of *Younger* abstention. Having remanded cause number A–91–CA–539 to the 160th Judicial District Court of Dallas County, Texas, there now exists a current state court proceeding, and this Court may also abstain from hearing cause number A–90–CA–783 on the grounds of *Younger* abstention. Synchronal's federal claims can be presented in the state court and the implication of important state interests makes the state court the proper forum. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). So long as no substantive rulings on the merits have occurred in the federal court, the case may be remanded to the state court in which a later suit was filed. *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 238, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984); *Job Journal, Inc. v. Mattox,* 931 F.2d 889 (5th Cir.1991).

There have been no substantive rulings in these cases in this federal court or any of its predecessors. The only ruling other than to transfer was an order denying a default judgment against Jim Mattox in cause number A–90–CA–783 entered by Judge Nowlin on March 18, 1991. That is not a substantive ruling.

---

**3.** Although cause numbers A–90–CA–783 and A–91–CA–539 have been consolidated, the two actions have not lost their separate identity and,

thus, this Court may dismiss the one while remanding the other. *See McKenzie v. United States,* 678 F.2d 571, 574 (5th Cir.1982).

## CONCLUSION

In accordance with the above opinion, the Court ORDERS that the cause number A–90–CA–783 is DISMISSED WITHOUT PREJUDICE to the Defendants raising their claims as defenses to the State of Texas' claims in the 160th Judicial District Court of Dallas County, Texas.

The Court FURTHER ORDERS that cause number A–91–CA–539 is REMANDED to the 160th Judicial District Court of Dallas County, Texas.