**VAUGHAN REGIONAL MEDICAL CENTER, Plaintiff,**

**v.**

**Walter C. SMITH, etc., et al., Defendants.**

**Civil Action No. 95–D–294–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 7, 1995.

David E. Belser, G. Dennis Nabors, Montgomery, AL, for plaintiff.

Richard A. Lawrence, Montgomery, AL, Robert E. Sasser, Montgomery, AL, Peggy L. Schmitz, Montgomery, AL, for defendants.

### MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is the defendants Walter C. Smith and State Health Planning and Development Agency's motion filed March 28, 1995, to dismiss the above-styled case. The plaintiff, Vaughan Regional Medical Center, responded in opposition on April 13, 1995. Thereafter, the defendants replied to said response on April 26, 1995. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the defendants' motion is due to be granted.

### STANDARD OF REVIEW FOR MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure,* a defendant may move to dismiss a complaint on the ground that the plaintiff has failed to state a claim upon which relief may be granted. A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See e.g., Sofarelli v. Pinellas County,* 931 F.2d 718, 721 (11th Cir.1991); *see also Brower v. County of Inyo,* 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

On a motion to dismiss for failure to state a claim upon which relief may be granted, the movant "sustains a very high burden." [1] *Jackam v. Hospital Corp. of America Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.

---

1. Rule 12(b)(6) of the *Federal Rules of Civil Procedure* permits a party to plead or move for dismissal of a complaint if that complaint fails to state a claim upon which relief may be granted.

1986) (citing *Currie v. Cayman Resources Corp.*, 595 F.Supp. 1364, 1376 (N.D.Ga.1984)). The Court of Appeals for the Eleventh Circuit has held that "motions to dismiss for failure to state a claim should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims." *Jackam*, 800 F.2d at 1579 (quoting *Bracewell v. Nicholson Air Servs., Inc.*, 680 F.2d 103, 104 (11th Cir.1982)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

## PROCEDURAL FACTS AND HISTORY

The plaintiff, Vaughan Regional Medical Center (hereafter "Vaughan"), instituted this action against the defendants, Alabama State Health Planning Agency (hereafter "SHPDA") and Walter C. Smith (hereafter "Mr. Smith"), seeking a declaratory judgment[2] that "Defendants' conduct under color of state law granting Four Rivers' request for non-reviewability without consideration of the provisions of [42] U.S.C. § 1395dd ultimately deprives Plaintiff of its right to equal protection of the law and due process."

Vaughan is a § 501(c)(3) non-profit corporation operating an acute care hospital in Dallas County, Alabama. SHPDA is the agency of the State of Alabama responsible for granting or denying certificates of need (hereafter "CON") and granting or denying letters of non-reviewability. Mr. Smith is the executive director of SHPDA.

SHPDA is statutorily charged with the responsibility of overseeing and regulating certain health care services and facilities within Alabama. More particularly, SHPDA, through the CON review process, assures that only those health care services that comply with the CON laws shall be offered or developed in this state. SHPDA is also charged with preventing the construction of unnecessary or duplicative health care facilities and services. Thus, SHPDA serves as a cost-containment agency in the field of health care.

There are three legal processes available under SHPDA: (1) a letter of non-reviewability pursuant to § 410–1–7–.02 of SHPDA Rules and Regulations (Rev.1992); (2) declaratory rulings pursuant to § 410–1–9–.01 of SHPDA Rules and Regulations (Rev. 1992); and (3) a CON in which Ala.Code §§ 22–21–260 thru 22–21–277 govern. Specifically, Ala.Code §§ 22–21–260 thru 22–21–277 set out the process that a health care facility must follow to obtain a CON. Furthermore, the Alabama Administrative Procedure Act, codified at Ala.Code §§ 41–22–4 and 41–22–11, contains the statutory authority by which SHPDA can issue declaratory rulings.[3]

A hospital or health care facility is subject to CON review if the facility falls within certain statutory categories. Relevant to this case is Ala.Code § 22–21–263(a)(2) which, prior to April 12, 1994, mandated that all "new institutional health services" offered or developed within this state with new annual operating costs over $500,000.00 shall be subject to CON review. After April 12, 1994, the threshold limit was raised to $800,000.00 in new annual operating costs.

In 1992, Selma Medical Center, the predecessor in interest to Four Rivers Medical Center, Inc. (hereafter "Four Rivers"), applied for a CON from SHPDA to provide obstetrical services in Dallas County.[4] The application for a CON was properly placed before the Certificate of Need Review Board (hereafter "CONRB") and was denied on or about July 10, 1992. The original CON application indicated that the operating ex-

---

**2.** The Declaratory Judgment Act provides:
   In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
   28 U.S.C. § 2201(a).

**3.** The court acknowledges that this is one of the more complex areas of Alabama law.

**4.** The court reiterates that it must assume that all factual allegations set forth in the complaint are true. *United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir.1990).

penses for the obstetrics unit would be approximately $1,000,000.00 per year based on an annual number of obstetric patients of 435.

On November 29, 1993, SHPDA received information that Selma Medical Center was advertising for obstetric physicians in violation of a Fair Hearing Officer's order issued March 24, 1993, which had denied Selma Medical Center's CON application subsequent to its denial by the CONRB. Thereafter, on December 7, 1993, Mr. Smith wrote a letter to Four Rivers requesting an explanation of why it was offering obstetrical services without a CON. On December 29, 1993, Four Rivers responded by letter to Mr. Smith, explaining that the proposed project fell below the threshold amounts set by Ala. Code § 22–21–263(a)(2), i.e. that the annual operating expense will be below $500,000.00.

On January 10, 1994, Mr. Smith sent a letter to Four Rivers asking for further clarification of the cost estimate supplied by Four Rivers. On February 22, 1994, SHPDA received a letter from counsel representing Four Rivers reiterating that the proposed project would not exceed the financial thresholds outlined in § 22–21–263(a)(2). On March 22, 1994, Mr. Smith informed Four Rivers by letter that the project fell under CON jurisdiction and should be subject to a full CON review.

On April 28, 1994, counsel for Four Rivers once again requested that SHPDA re-evaluate its decision subjecting Four Rivers to CON review. Four Rivers' counsel argued that the project should be considered exempt from CON review, because the new financial thresholds had been increased from $500,-000.00 to $800,000.00 for annual operating expenses. On May 4, 1994, Mr. Smith issued a letter of non-reviewability based upon the representations of the management of Four Rivers and its counsel that operation expenses would remain below $800,000.00.

Thereafter, on May 19, 1994, Vaughan informed SHPDA that, in its opinion, Four Rivers could not provide the obstetrical services for less than $800,000.00 in operating expenses. Therefore, SHPDA requested that a meeting be held on June 13, 1994, to discuss Four Rivers' ability to offer obstet-

rical services below the threshold amounts. On June 13, 1994, a meeting was held between Mr. Smith, Peggy Schmitz (legal counsel for SHPDA) and Glen Brown (administrator for Four Rivers) to discuss the methodology that Four Rivers' used to determine its annual operational expenses for an obstetrics unit.

On July 21, 1994, Mr. Smith revoked the original letter of non-reviewability issued May 4, 1994, and again informed Four Rivers that it was subject to CON review. The letter of July 21, 1994, summarized the June 13, 1994 meeting in part as follows:

> At that meeting, the administrator of Four Rivers provided information to SHPDA staff stating that the operating expenses for the proposed OB unit would be $795,-069.00 per year. No where in the transcript of that meeting does Four Rivers explain the sudden increase in proposed operating expenses for the unit. Under the best scenario the increase in proposed operating expenses would be at least fifty-nine percent ($500,000 to $795,069), but there is no indication that the proposed services differ from what had been asserted in previous correspondence. One must infer that either the staff of Four Rivers has minimal expertise in projecting expenditures or that each previous correspondence was a deliberate attempt to mislead SHPDA staff as to what the actual contemplated operating expenses were in hope of avoiding CON review. Under any scenario this creates a climate of doubt as to the veracity of the figures put forth as the proposed operating expenses of the OB facility.

Pl.'s Compl. at ¶ 18.

For the next several months, Four Rivers attempted to persuade SHPDA and Mr. Smith that the obstetrics unit of Four Rivers should not be subject to CON review due to Four Rivers' own determination that the obstetrics unit could stay below the operating expenditures of $800,000.00. On December 13, 1994, Mr. Smith sent a letter informing Four Rivers that it was SHPDA's opinion that Four Rivers must file a CON application

before they could begin offering obstetrical services.

On January 17, 1995, counsel for Four Rivers sent a letter to SHPDA informing it that a complaint had been filed in the Circuit Court of Montgomery County asking the court to declare that the proposed obstetrical services of Four Rivers is not CON reviewable. Vaughan filed a motion to intervene in the above-mentioned case, and Four Rivers objected to Vaughan's proposed intervention. Before a hearing could be held on the intervention, the case was settled and dismissed, and a letter of non-reviewability was issued by SHPDA on February 21, 1995.

Furthermore, attached to this aforementioned letter is a January 11, 1995, projected statement of operations of the obstetrical services unit at Four Rivers for the year ending December 31, 1995. This projection was compiled by a certified public accountant located in Selma, Alabama. The projection statement indicates that the projected operating expenses are based upon a total of 215 obstetric patients per year.

Vaughan alleges that if there are more obstetric patients than projected, then the amount of the annual operating service will rise proportionately and eventually exceed the $800,000.00 limit. Vaughan contends that it will be adversely affected by Four Rivers' allegedly illegal offering of obstetrical services, because the close proximity of the facilities will result in a sharing of the patient base. Vaughan further contends that the ultimate result will be increased costs for the institutions and the patients or their carriers.

The critical issue before the court is Vaughan's contention that SHPDA should have considered the Emergency Medical Treatment Active Labor Act (hereafter "EMTALA"), codified as 42 U.S.C. § 1395dd, before issuing Four Rivers a letter of non-reviewability.[5] Essentially, Vaughan alleges that § 1395dd statutorily preempts various aspects of the state regulated CON process. Consequently, Vaughan argues that SHPDA should have considered § 1395dd in determining Four Rivers' ability to keep its annual

operating expense below the threshold level. *See* Br. in Resp. to Def.s' Mot. to Dis. at 2.

To remedy said violation, Vaughan asks the court to: (1) enter a declaratory judgment that the defendants are required to consider the mandates of 42 U.S.C. § 1395dd in determining Four Rivers' request for a letter of non-reviewability; (2) declare that the figures in this case are so uncertain that a letter of non-reviewability should not have been granted, but that a declaratory ruling by the CONRB should have been used to explore this request in a public forum open to intervention by parties according to law; (3) order CONRB to hear this declaratory ruling at a meeting to be scheduled within one month of the court's said order and determine whether Four Rivers should be granted an exemption; (4) award the plaintiff's attorney's fees under 42 U.S.C. § 1988; and (5) grant such other and further relief as the court deems just and proper.

The defendants move the court to dismiss this declaratory judgment action on the following grounds: (1) the plaintiff has failed to join an indispensable party; and (2) the complaint fails to state a claim upon which relief can be granted, because SHPDA's alleged failure to consider 42 U.S.C. § 1395dd does not deprive Vaughan of equal protection or due process. The court will only address the defendants' second contention as it is dispositive of this case.

## DISCUSSION

### A. *Purpose of EMTALA*

■ Congress enacted EMTALA in response to a growing problem at hospitals known as patient dumping, wherein hospitals refused to provide emergency medical treatment to patients who were unable to pay. *In re Baby K,* 16 F.3d 590, 593 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 91, 130 L.Ed.2d 42 (1994) (citing *Brooks v. Maryland Gen. Hosp., Inc.,* 996 F.2d 708, 710 (4th Cir.1993)). The purpose of EMTALA is "to provide an 'adequate first response to a medical crisis' for all patients and 'send a clear signal to the hospital community … that all Americans, regardless of wealth or status,

---

**5.** 42 U.S.C. § 1395dd governs treatment of patients seeking emergency medical care.

should know that a hospital will provide what services it can when they are truly in physical distress.'" *Baber v. Hospital Corp. of America,* 977 F.2d 872, 880 (4th Cir.1992) (quoting 131 Cong.Rec. S13904 (daily ed. Oct. 23, 1985) (statement of Sen. Bob Dole)); *see also Brooker v. Desert Hosp. Corp.,* 947 F.2d 412, 415 (9th Cir.1991) (holding that EMTALA applies "to any and all patients"); *Gatewood v. Washington Healthcare Corp.,* 933 F.2d 1037, 1040 (D.C.Cir.1991) (same); *Cleland v. Bronson Health Care Group, Inc.,* 917 F.2d 266, 268 (6th Cir.1990) (same).

EMTALA accomplishes its purpose by imposing two duties on hospitals that have entered into Medicare provider agreements:

> First, those hospitals with an emergency medical department must provide an appropriate medical screening to determine whether an emergency medical condition exists for any individual who comes to the emergency medical department requesting treatment. A hospital fulfills this duty if it utilizes identical screening procedures for all patients complaining of the same condition or exhibiting the same symptoms.

> [Second,] an additional duty arises if an emergency medical condition is discovered during the screening process ... [O]nce an individual has been diagnosed as presenting an emergency medical condition, the hospital must provide that treatment necessary to prevent the material deterioration of the individual's condition or provide for an appropriate transfer to another facility.

*In re Baby K,* 16 F.3d at 593–94 (internal footnotes and citations omitted). As such, § 1395dd would apply to patients who are present in a hospital's emergency room in active labor.

### B. *Scope of EMTALA*

In this case, Vaughan essentially contends that 42 U.S.C. § 1395dd statutorily preempts various aspects of the state-regulated CON process, and therefore, SHPDA must consider this statute in determining Four Rivers' ability to keep its annual operating expenses below the threshold level. However, the defendants respond that a simple reading of the statute clearly defeats Vaughan's position.

Moreover, the defendants contend that § 1395dd does not create any obligations from which state agencies should consider this statute in granting CONs.

In support of its position, Vaughan relies on *New Orleans Public Service, Inc. v. City of New Orleans,* 782 F.2d 1236 (5th Cir.), *withdrawn in part,* 798 F.2d 858 (5th Cir. 1986), *cert. denied,* 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 515 (1987). There, New Orleans Public Service, Inc. (hereafter "NOPSI") provided electric service to most of the City of New Orleans. *Id.* at 1238. The Federal Energy Regulatory Commission (hereafter "FERC") had previously entered an order setting certain rates for electricity generated from a nuclear power plant from which NOPSI obtained wholesale electricity. *Id.* This order allocated percentages of costs among the various purchasers of this electricity, including NOPSI. *Id.* NOPSI filed an application for a permanent rate increase with the New Orleans City Council (hereafter "the Council"). *Id.* NOPSI was granted emergency interim relief by the Council; however, the Council later directed NOPSI to freeze electric rates until further regulatory action. *Id.* Furthermore, the Council refused to recognize the FERC-determined wholesale cost for retail rate-making purposes. *Id.* Thereafter, NOPSI filed a complaint seeking injunctive relief from the Council's order. *Id.* In its complaint, NOPSI argued that the Council's refusal to recognize the FERC-determined wholesale cost intruded upon and frustrated the Congressional intent behind the FERC, thereby violating the FERC's exclusive authority to regulate wholesale energy under the Federal Power Act, 16 U.S.C. §§ 824–824k. *Id.*

The Fifth Circuit held that NOPSI presented a substantial federal question over which the United States district court had jurisdiction under 28 U.S.C. § 1331. *Id.* at 1242. In making this determination, the court relied on precedent that "the phrase 'arising under' [in § 1331] masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." *Id.* at 1240 (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S.

1, 8, 103 S.Ct. 2841, 2845, 77 L.Ed.2d 420 (1983)). The court noted that although the FERC did not explicitly mandate a "pass through" of NOPSI's cost, the facts as shown at least presented a federal question as to the applicability of the FERC order and a local regulatory body. *Id.* at 1241.

Vaughan argues that, similar to NOPSI, it has at least presented a substantial federal question as to the applicability of § 1395dd, even though § 1395dd does not explicitly create an obligation that SHPDA consider its requirements in issuing CONs. Vaughan contends that Four Rivers cannot prospectively state that it will not treat active labor emergencies over and above 215 patients per year without intruding upon or frustrating the provisions of § 1395dd, which require a hospital to provide treatment. Vaughan further contends that SHPDA's refusal to recognize the ramifications of § 1395dd in reviewing Four Rivers' ability to keep its general operating cost below certain threshold limits equally frustrates the provisions of § 1395dd. In fact, Vaughan argues that SHPDA through its actions, will be perpetuating any violation of § 1395dd committed by Four Rivers by allowing Four Rivers to operate under a letter of non-reviewability when and if Four Rivers treats more than 215 patients. As such, Vaughan contends that it has stated a claim upon which relief can be granted in seeking a declaratory judgment with respect to the inter-relationship between the applicability of § 1395dd and the state regulated CON process.

On the other hand, the defendants contend that *New Orleans Public Service, Inc.* is distinguishable from this case. Specifically, the defendants argue that subject matter jurisdiction in the aforementioned case was based upon the plaintiff's statutorily-based preemption claim, which created a federal question. 782 F.2d at 1242 ("NOPSI's statutorily-based preemption claim presents a substantial federal question over which the district court has jurisdiction under 28 U.S.C. § 1331."). However, the defendants contend that in this case, Vaughan has not presented evidence of a statutory-based preemption

claim, and thus, Vaughan's reliance on *New Orleans Public Service, Inc.* is misplaced.

After a careful reading of *New Orleans Public Service, Inc.*, the court finds that the defendants' interpretation is correct. As the court in *New Orleans Public Service, Inc.* observed, a " 'plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.' " *Id.* at 1241 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983)). Thus, Vaughan must present evidence of a statutorily-based preemption claim in order to present a substantial federal question and survive the motion to dismiss. As such, the court will next address whether, in taking all the allegations in the complaint as true, Vaughan has stated a claim that § 1395dd statutorily preempts various aspects of the state regulated CON process.

In addressing preemption, the court stresses that § 1395dd states in pertinent part: "The provisions of this section do not preempt any State or local law requirement, except to the extent that the requirement directly conflicts with a requirement of this section." 42 U.S.C. § 1395dd(f). The court also finds it noteworthy to mention that preemption "of state law by federal statute or regulation is not favored in absence of persuasive reasons—either that the nature of the regulated matter permits no other conclusion, or that the Congress has unmistakably so ordained." *Chicago & N. Western Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981)) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963)). Here, the court finds that Vaughan has not pointed to a direct conflict between the federal statute and Alabama law.

Furthermore, after analyzing relevant Alabama law, i.e. guidelines for the control and development of certain health care facilities, and § 1395dd, the court can find no

direct conflict between the federal statute and state law. In fact, the court finds that the issue of preemption does not even arise between the CON process as set forth in Ala.Code §§ 22–21–260 thru 22–21–278 and § 1395dd, because there are different purposes behind each statute.[6] For instance, the CON process as set forth in Ala.Code §§ 22–21–260 thru 22–21–278 governs the licensing requirements for hospitals to provide care in the State of Alabama. On the other hand, § 1395dd governs the duties of a hospital when presented with a patient seeking emergency medical care.

Moreover, the language of § 1395dd explicitly disposes of Vaughan's preemption argument. For instance, the civil enforcement section of § 1395dd(d)(2), grants any individual suffering personal harm and any medical facility that suffers a financial loss permission to enforce the provisions of § 1395dd against a participating hospital. Specifically, the civil enforcement section states:

**(A) Personal harm**

Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

**(B) Financial loss to other medical facility**

Any medical facility that suffers a financial loss as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for financial loss, under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

42 U.S.C. § 1395dd(d)(2) (emphasis supplied). As the above indicates, the causes of action provided by § 1395dd seek relief against the participating hospital violating said statute, not the state agency responsible for licensing hospitals.

In its response to the motion to dismiss, Vaughan also has requested oral argument. The court has nearly four hundred cases on its civil docket and a great number of others on its criminal docket. As a result, the court does not possess the time to grant and hear all requests for oral argument. After reviewing the record in the instant case, the court finds that the issue before the court is not so novel or complex as to necessitate a hearing. Therefore, the court finds that Vaughan's request for oral argument on this matter is due to be denied.

## CONCLUSION

For the foregoing reasons, the court finds that defendants Walter C. Smith and State Health Planning and Development Agency's motion to dismiss is due to be granted and that plaintiff Vaughan's request for oral argument is due to be denied. A judgment in accordance with this memorandum opinion will be entered separately.

---

6. In determining whether federal law preempts a state statute, the court must look to congressional intent. *See FMC Corp. v. Holliday*, 498 U.S. 52, 56–57, 111 S.Ct. 403, 406–07, 112 L.Ed.2d 356 (1990); *see also R.J. Reynolds Tobacco Co. v. Durham County*, 479 U.S. 130, 140, 107 S.Ct. 499, 507, 93 L.Ed.2d 449 (1986) (stating primary emphasis is given to the ascertainment of congressional intent). Specifically, preemption is compelled when Congress' command to preempt is "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Id.* 498 U.S. at 56–57, 111 S.Ct. at 406–07. The chief indication of intent to preempt state law occurs where "Congress has legislated so comprehensively that it has left no room for supplementary state legislation." 479 U.S. at 140, 107 S.Ct. at 507. Furthermore, Preemption may also be found where state legislation conflicts with the purposes and objectives of Congress. *Id.*